UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY KILLEN and MICHAEL KILLEN                                               PLAINTIFFS

V.                                      CIVIL ACTION NO.  3:20-CV-829-KHJ-MTP

JOHNSON & JOHNSON and ETHICON, INC.                                    DEFENDANTS

ORDER

This action is before the Court on Defendants Johnson & Johnson and Ethicon, Inc.'s ("Defendants") Motion for Partial Dismissal of Plaintiffs' Second Amended Complaint [16]. As explained below, the Court grants in part and denies in part Defendants' motion.

I.   Facts and Procedural History

Plaintiffs Mary and Michael Killen allege that Mrs. Killen sustained injuries from the implantation of the TVT-Obturator ("TVT-O") pelvic mesh device manufactured by Defendant Ethicon, Inc. for the surgical treatment of stress urinary incontinence. Second Am. Compl. [15]. The Killens contend that, following implantation of the TVT-O mesh, the mesh eroded and caused Mrs. Killen chronic injuries by degrading, shrinking, contracting, migrating, and deforming. *Id.* ¶ 7. They also allege the TVT-O device's mesh is incompatible with human tissue and promotes immune responses in large swaths of the population. *Id.* ¶ 22. Following an immune response, the TVT-O's degradation causes chronic inflammation, nerve entrapment, infectious disease response, and chronic pain. *Id.* ¶ 23–24. The Killens

contend that, at all times relevant to Mrs. Killen receiving the device, Defendants knew of the TVT-O's defective condition. *Id.* They assert Defendants marketed the product with knowledge of the defects and mislead the medical community as to the risks associated with the material. *Id.* ¶¶ 28–30.

The Killens sue for (I) design defect, (II) manufacturing defect, (III) failure to warn, (IV) breach of express warranty, (V) failure to conform to representations, and (VI) unjust enrichment, seeking compensatory and punitive damages, and equitable relief. [15] ¶¶ 90–185. Mr. Killen also brings a loss of consortium claim. *Id.* ¶¶ 186–92. Defendants move to dismiss the Killens' claims for manufacturing defect (Count II), breach of express warranty (Count IV), failure to conform to representations (Count V), and unjust enrichment (Count VI) claims under Rule 12(b)(6) for failure to state a claim. [16].

II.    Standard

In reviewing a Rule 12(b)(6) motion, the Court, viewing all evidence in the light most favorable to the plaintiff, must consider whether the plaintiff states a valid claim for relief. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To state a valid claim for relief, the plaintiff must allege enough facts that, when accepted as true, show "facial plausibility" and allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff need not provide detailed factual allegations to survive a Rule 12(b)(6) motion but must allege enough facts "to raise a right of relief

above the speculative level." *Twombly*, 550 U.S. at 555. The Court need not accept as true a plaintiff's legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

III.    Analysis

Defendants ask the Court to dismiss these claims from Killens' Second Amended Complaint: Count II, manufacturing defect; Count IV, breach of express warranty; Count V, failure to conform to representations; and Count VI unjust enrichment. The Court addresses each claim separately.

   A.  Count II: Manufacturing Defect

Defendants argue that the manufacturing defect claim fails because the Killens do not allege that the type of mesh used in Killen's TVT-O implant differed from the mesh used in other TVT-O devices. [17] at 3. Defendants also argue that the Killens do not plead enough facts showing that the TVT-O implant deviated from Ethicon's design specifications. *Id.* The Killens contend that the TVT-O product implanted in Mrs. Killen was manufactured in a defective manner because the manufacturer failed to: (1) use biologically compatible mesh material; (2) provide adequate specifications in design; (3) cut the mesh without sharp edges, and; (4) to include a protective sheath. [15] ¶¶ 104–09.

To succeed on a claim for manufacturing defect under the Mississippi Products Liability Act, a party must prove these elements existed "at the time the product left the control of the manufacturer":

> (i) [t]he product was defective because it deviated in a material way from the manufacturer's or designer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, . . .
> (ii) the defective condition rendered the product unreasonably dangerous to the user or consumer; and
> (iii) the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63(a)(1). Manufacturing defect claims involve allegations that the specific product the consumer bought was manufactured in a way that deviated from the design specification. *Hickory Springs Mfg. Co. v. Star Pipe Prod.*, 991 F. Supp. 2d 778, 780 (N.D. Miss. 2014). A party must plead how the subject product deviated from the manufacturer's specifications or other units, or the claim must be dismissed. *Adams v. Energizer Holdings,* Inc., No. 3-12-CV-797, 2013 WL 1791373, at *3 (S.D. Miss. Apr. 19, 2013).

The Killens fail to sufficiently plead a manufacturing defect. The Killens may state a claim for a manufacturing defect by claiming Mrs. Killen's TVT-O was materially different from other TVT-O's or by claiming the device deviated from design specifications. *See* Miss. Code Ann. § 11-1-63(a)(1)(i). They assert the second theory. *See* [15], ¶ 100. To support this theory, the Killens allege the TVT-O implant did not conform to Ethicon's intended design by (1) using non-medical grade material, *id.* ¶ 104, (2) being cut by a laser or machine that caused the polypropylene mesh to have sharp edges, *id.* ¶ 107, and (3) not having a sheath, which created an abrasive insertion and lead to mesh erosion, *id.* ¶ 108. None of these allegations support a theory of manufacturing defect because the Killens admit Defendants designed the TVT-O to use polypropylene mesh, *id.* ¶ 20, and do

4

not allege that Defendants designed the TVT-O to have a sheath. And the Killens do not allege design specifications requiring particular methods in cutting the TVT-O mesh or prohibiting the use of a laser or machine in the process. For these reasons, the Court dismisses the Killens' manufacturing defect claim.

### B. Count IV: Breach of Express Warranty

The Killens argue Defendants made and breached express warranties to them and their physician about the quality and safety of the device in advertisements, marketing materials, and instructions. [15] at 133–45. Defendants assert that this claim is time-barred and, even if it is timely, the Killens identify no express warranty or representations Defendants made to them. [17] at 5–11. The Killens counter that the discovery rule and Defendants' acts of fraudulent concealment tolled the statute of limitations, rendering their claim timely. Alternatively, the Killens assert that Defendants waived or should be equitably estopped from asserting their limitations argument. [15] at 79–89.

#### a. Statute of Limitations

When a defendant asserts a statute of limitations defense,[1] the Court may grant a motion to dismiss under Rule 12(b)(6) if "[1] it is evident from the plaintiff's pleadings that the action is time-barred, and [2] the pleadings fail to raise some

---

[1] Defendants did not waive their statute of limitations defense. "[T]he Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." *Bryant v. Wyeth, Inc.,* 816 F. Supp. 2d 329, 332 (S.D. Miss 2011). Under Rule 8(c), defendants must raise all affirmative defenses in their first responsive pleading. *Id.* Here, Defendants have not answered the Complaint but assert the defense in their pre-answer motion. Before the answer, a defendant may raise a defense in a motion to dismiss. *See United Transp. Union v. Florida E. C. R. Co.,* 586 F.2d 520, 527 (5th Cir. 1978). Because the Defendants have yet to neglect to include the defense in an answer, it is not waived.

5

basis for tolling." *Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014). In the presence of these two factors, the Court should grant a defendant's motion to dismiss without considering defendant's alternative grounds for dismissal. *Id.* The Court therefore will first address whether Mississippi's statute of limitations time-bars the Killens' breach of express warranty claim, and if so, whether the pleadings raise grounds for tolling.

i. Applicable Limitations Period

In Mississippi, the statute of limitations for breach of warranty is six years from accrual. Miss. Code Ann. § 75-2-725(1). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* § (2). A breach of warranty occurs when a party tenders delivery unless the party explicitly extends the warranty to future performance. *Id.* But the warranty's promise or guarantee to extend into the future must be "clearly stated." *Rutland v. Swift Chem. Co.*, 351 So. 2d 324, 325 (Miss. 1977). Even complete inability to discover breach at time of delivery will not inhibit the statute's running, nor can it imply a future warranty. *Id.* (rejecting argument that "very nature of fertilizer . . . requires that its warranty be 'prospective in operation'").

Applying these principles, the statute of limitations started running on the date Mrs. Killen's physician implanted the TVT-O, absent an express future warranty. While the Killens allege the Defendants made express future warranties, they only point to statements in advertisements and brochures that the TVT-O is a permanent cure [15] ¶133; it is safe and effective *id.* ¶140; it does not shrink or

deform *id.*; it does not degrade *id.*; it only may cause temporary injury *id.*; it is effective *id.* ¶144; complications are rare *id.*; and it was safer and more effective than other procedures *id.* ¶145. Even if these statements are in fact express warranties, they do not explicitly suggest that they are for future performance. There is no specific reference to a future period. Because the Killens do not properly allege an express future warranty, the statute of limitations started running on April 15, 2009. As a result, the Killens' breach of warranty claim is time-barred as of April 15, 2015, absent grounds for tolling.

## ii. Fraudulent Concealment

Fraudulent concealment tolls the statute of limitations so that "the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or [should] have been . . . discovered." Miss. Code Ann. § 15-1-67. A plaintiff must prove "(1) some affirmative act of conduct was done and prevented discovery of the claim, and (2) due diligence was performed . . . to discover the claim." *Trustmark Nat'l Bank v. C. Brent Meador*, 81 So. 3d 1112, 1119 (Miss. 2012) (citing *Sanderson Farms, Inc. v. Ballard*, 917 So. 2d 783, 790 (Miss. 2005)). Because the defendant's actions must conceal the discovery of a claim, those affirmative acts must be after the claim's natural accrual. *See Bryant v. Wyeth, Inc.*, 816 F. Supp. 2d 329, 335 (S.D. Miss. 2011). Additionally, under Rule 9(b) a plaintiff must plead cases alleging fraudulent concealment with particularity. *See* Fed. R. Civ. P. 9(b); *Hignite v. Am. Gen. Life & Accident Ins. Co.*, 142 F. Supp. 2d 785, 789 (N.D. Miss. 2001).

The Killens' Complaint does not meet the pleading standard for asserting fraudulent concealment. They merely assert that Defendants "knowingly made false claims about the safety and quality of [their] . . . product in the documents and marketing materials [they] provided to the FDA, physicians, and the general public" [15] ¶ 70. The Complaint also asserts that Defendants "fraudulently and affirmatively concealed the defective nature of the . . . product from Plaintiff and her implanting physician." *Id.* These assertions, though, suggest that the fraudulent statements were made before the TVT-O's delivery, especially considering the later paragraph explaining that Mrs. Killen would have considered these concealed facts in deciding to buy. *Id.* ¶ 71; *see also id.* ¶ 73 (stating Plaintiff justifiably relied on these statements), ¶ 83 (occurring in 2002), ¶ 84 (occurring in 2005), ¶ 85 (occurring in 2008). Other paragraphs fail to assert affirmative acts. *See id.* ¶ 77 (stating that Defendants continue to fail to disclose).

Equally inadequate are paragraphs which fail to meet the plausibility standard established in *Twombly*. Paragraph 75 merely states, "To this day, Defendants continue to misrepresent, conceal, and/or fail to disclose the true defective nature of their TVT-O product." *Id.* ¶ 75. This statement is a "threadbare" legal conclusion, lacking sufficient facts to give the defendant fair notice of the factual basis for the claim. The same defect is present in paragraph 82, which fails to explain what action(s) constituted concealment. *Id.* ¶ 82. For these reasons, the Killens have not properly plead "fraudulent concealment" as a basis for tolling.

8

       iii.  Discovery Rule

Mississippi law provides both common law and statutory discovery rules. In general, discovery rules toll the statute of limitations until the date when a plaintiff "knew or should have known she was injured and that defendant's . . . conduct caused the injury." *McLeod v. Millette*, 301 So. 3d 568, 574 (Miss. 2020) (quoting *Pollan v. Wartak*, 240 So. 3d 1185, 1193 (Miss. 2017)). At common law, plaintiffs could avoid the statute of limitations for latent tort injuries. *See Schiro v. American Tobacco Co.*, 611 So. 2d 962, 964–66 (Miss. 1992). Statutes have superseded much of this common law rule. *See e.g.*, Miss. Code Ann. § 15-1-49(2); *see also Lincoln Elec. Co. v. McLemore*, 54 So. 3d 833, 836–37 (Miss. 2010).

The Defendants move to dismiss a breach of warranty claim not a tort claim. Additionally, the relevant provisions in the Mississippi Code § 75-2-725(2), expressly provide that a cause of action will only accrue at discovery where a warranty explicitly extends to future performance. Because a breach of warranty claim sounds in contract, and the Defendants made no explicit future warranties, no common law or statutory discovery rule tolls the statute of limitations.

       iv.  Equitable Estoppel

Under Mississippi law, the Killens can only invoke the equitable estoppel doctrine if they can prove the conduct of the opposing party induced them to not file their complaint within the statute of limitations and the opposing party knew or had reason to know such consequences would follow. *Harrison Enters. v. Trilogy Commc'ns., Inc.*, 818 So. 2d 1088, 1095 (Miss. 2002) (citing *PMZ Oil Co. v. Lucroy*,

9

449 So. 2d 201, 206 (Miss. 1984)). Because it is an equitable doctrine, the Court should only invoke estoppel to prevent unconscionable results. *Id.*

In their Second Amended Complaint, the Killens assert estoppel in paragraphs 82 and 89. [15]. Paragraph 82, however, requests estoppel via a fraudulent concealment theory, which the Court discusses above. *See supra* Section III.B.a.i. Paragraph 89 states estoppel applies because both the Killens and the Defendants "actively pursued" resolution of the claims, and the Killens reasonably relied on Defendant's representations. Nowhere do the Killens assert "inducement" by the Defendants to file the Complaint outside the statutory period. Nor does the Complaint refer to specific facts explaining what both parties did to "actively pursue" resolution. Finally, the Complaint does not assert that Defendants knew or should have known their "active pursual" or other representations would lead to the Killens' late filing. For these reasons, the Complaint does not properly plead equitable estoppel. Because the breach of warranty claim is time-barred and no other basis for tolling is properly pleaded, the Defendants' 12(b)(6) Motion to Dismiss is granted on Count IV.

    C.  Count V: Failure to Conform to Representations

In Count V, the Killens assert a claim under the Mississippi Products Liability Act ("MPLA") for "Failure to Conform to Representations." [15] ¶¶ 155–72. Defendants contend that this claim is duplicative of Count IV—Breach of Express Warranty, so the Court should dismiss the claim. [17] at 11.

The MPLA casts a wide umbrella governing all causes of action that attempt to establish liability "for damages caused by a product." Miss Code Ann. § 11-1-63; see also *Huntley v. CL Med. SARL*, No. 2:14-CV-105-KS-MTP, 2015 WL 5521796, at *6 (S.D. Miss. Sept. 16, 2015) (observing plaintiff's ordinary negligence, breach of warranty, negligent infliction of emotional distress, fraud, and misrepresentation are "subsumed" and governed by the MPLA). Relevant here, the Act requires a plaintiff's cause of action to meet specific requirements if the claim (1) attempts to establish liability for damages caused by a product and (2) is asserted against a manufacturer, designer, or seller. Miss. Code Ann § 11-1-63(a).

The first of these statutory requirements is that the cause of action fit within one of four enumerated "avenues" of liability. § 11-1-63(a)(i). The first three avenues lay out codified renditions of the traditional manufacturing defect, design defect, and defect in warnings or instructions claims. § 11-1-63(a)(i)(1)–(3). The fourth avenue of liability requires a plaintiff to prove "the product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product." § 11-1-63(a)(i)(4). This avenue is at issue here.

Defendants assert that § 11-1-63(a)(i)(4) only "imposes liability for breach of express warranty," and that the "failure to conform" language provides the same statutory claim as "breach of express warranty." [17] at 11; Reply in Support of Def. Mot. to Dis. [19] at 6. The Killens contend that this language in the MPLA permits a claim under the "failure to conform" language. Resp. in Opp. To Def. Mot. To Dis.

11

[18]. The Defendants counter that the statute's reference to express warranty and "failure to conform" in the same line makes the "failure to conform" language a subpart of an express warranty claim, barring any other cause of action. [17] at 11.

The Defendants' reading strains the statute's text. Incorporating the "failure to conform" language into the express warranty's would disregard legislatively adopted language and function to strike it from the Mississippi Code. *See Latiolais v. Huntington Ingalls, Inc.,* 951 F.3d 286, 294 (5th Cir. 2020) (en banc) ("statute[s] should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (citation omitted)) (surplusage canon). The Mississippi Supreme Court contemplates two categories of claims could satisfy § 11-1-63 (a)(i)(4): "breach of express warranty" and "failure to conform to express representations." In *Forbes v. GMC*, the court found that the plaintiff must prove the defendant "either 'breached an express warranty *or* failed to conform to other express factual representations.'" 935 So. 2d 869, 875 (Miss. 2006) (quoting Miss. Code Ann. § 11-1-63(a)(1)(4)). By creating and emphasizing the coordinating disjunction, "either-or," the Mississippi Supreme Court implies that §11-1-63 (a)(i)(4) can be satisfied by one of these two legal theories.

That express warranties are not materially equivalent to representations under Mississippi law bolsters this conclusion. Mississippi law provides that express warranties are generated by affirmations of fact that are part of the bargain and relate to the goods, as well as "[a]ny description of the goods which is made part of the basis of the bargain." Miss. Code Ann. § 75-2-313 (1)(a), (b). Both occurrences

12

generate a warranty that the goods conform to the affirmations and descriptions. *Id.* Alternatively, theories like tortious misrepresentation require representations of fact but do not require them to be the basis of a bargain. *See, e.g.*, *Great Am. E&S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420, 426 (Miss. 2012) (negligent misrepresentation); *Levens v. Campbell*, 733 So. 2d 753, 761–62 (Miss. 1999) (fraudulent misrepresentation).

Based on the heading and the facts alleged in support of the claim, the Court construes Count V as a negligent misrepresentation claim subject to the MPLA.[2] The Complaint alleges: (1) that Defendants made misrepresentations of fact when they stated the TVT-O would not "degrade or contract or shrink, fray, cord, curl, harden, lose particles, corrode, and/or otherwise deform," [15] ¶¶ 161, 164; (2) that the representation was material, *id.* ¶¶ 163–64; (3) that Defendants failed to exercise a degree of diligence and expertise expected of them, *id.* ¶¶ 169–71; (4) reasonable reliance on representations, *id.* ¶¶ 159, 166; and (5) that the plaintiff suffered direct, proximate damages, *id.* ¶ 172. The "failure to conform" avenue only requires that the misrepresentation be express and that the claimant justifiably rely on the product. *See* § 11-1-63(a)(i)(4). The Killens allege both. *See* [15] ¶164, 166.

The Killens further satisfy the added MPLA requirements: they allege several ways the defective condition was unreasonably dangerous to users, *id.* ¶¶

---

[2] Under Mississippi law, negligent misrepresentation requires: (1) a factual misrepresentation; (2) materiality; (3) failure to exercise due diligence; (4) reasonable reliance; and (5) direct and proximate damages. *Great Am. E&S Ins. Co.*, 100 So. 3d at 426.

162–63; and the damages were the proximate result of the defect, *id.* ¶ 172. The Court finds Count V is not duplicative. Thus, the Court denies Defendants' motion to dismiss on duplicity grounds.

    D. Count VI: Unjust Enrichment

Defendants argue the Court should dismiss the Killens' claim for unjust enrichment because the MPLA subsumes it and because the allegations sound in tort, not in contract. Contrarily, the Killens contend the MPLA does not apply to actions seeking restitution on a quasi-contractual theory, and they are entitled to restitution damages for not receiving the TVT-O device for which she paid. *Id.* ¶¶ 173–85.

An unjust enrichment claim is an equitable claim when a plaintiff seeks restitution damages for monies or benefits mistakenly paid to the defendant. *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012). Unjust enrichment only applies "where there is no legal contract and the 'person sought to be charged is in possession of money . . . which in good conscience and justice he should not retain . . . .'" *Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 442 (Miss 2012) (quoting *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)).

As discussed above, the MPLA subsumes common law causes of action seeking damages a product caused, requiring claims to meet certain additional standards. Miss. Code Ann. § 11-1-63(a); *see also Elliott*, 181 So. 3d at 268–69. Defendants are correct that an unjust enrichment claim sounds in contract and not in tort. They err, however, in presuming that the MPLA automatically subsumes

14

the Killens' unjust enrichment claim. The MPLA subsumes only common law actions that seek compensatory damages a product cause. The Killens could recover restitution damages if they properly pleaded unjust enrichment.[3]

Count VI states the Killens have entered no contract with Defendants that would bind them to the purchase of a TVT-O product. [15] ¶ 177. But they also state that they paid for the TVT-O product, *id.* ¶ 179 and that Defendants accepted payment by the Killens or others on the Killens' behalf, *id.* ¶ 180. Count VI outlines the existence of a sales contract. *See* Miss. Code Ann § 75-2-204 (sales contract formation in general); § 75-2-201(3)(c) (no need for writing where goods and payment have been accepted); *Woodruff v. Thames*, 143 So. 3d 546, 554 (Miss. 2014) (elements of a contract). As a result, the Killens did not properly plead the first requirement of an unjust enrichment claim—that there be no legal contract between the parties. For this reason, the Court dismisses the Killens' unjust enrichment claim.

IV.     Conclusion

This Court has considered all of parties' arguments. Those the Court does not address would not have changed the outcome. For the reasons stated, Defendants' motion is granted on Count II (manufacturing defect), Count IV (breach of express warranty), and Count VI (unjust enrichment). The motion is denied on Count V

---

[3] In Count VI, the Killens' Complaint is ambiguous as to whether they seek compensatory damages for injuries the product caused or restitution damages for monies mistakenly paid. *See* [15] ¶ 185. In so far as they seek payment for "damages caused by a product," the MPLA subsumes the claim. The Killens could only seek restitution damages under an unjust enrichment claim.

15

(failure to conform to representations). The Killens' claims for manufacturing defect, breach of express warranty, and unjust enrichment are dismissed for failure to state a claim.

SO ORDERED AND ADJUDGED this the 3rd day of February, 2022.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE